FILED
2014 Jan-31  AM 10:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | | |
|---|---|---|
| **HARRIETT WILSON,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:11-CV-02703-MHH** |
| | } | |
| **THE STANDARD INSURANCE** | } | |
| **COMPANY,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

In this action, plaintiff Harriet Wilson asks the Court to order the defendant, The Standard Insurance Company ("SIC"), to provide disability benefits to her under a group long-term disability policy that SIC issued to Ms. Wilson's employer.  Ms. Wilson asserts her claim against SIC under the Employee Retirement Income Security Act, commonly known as ERISA.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, SIC filed a motion to dismiss Ms. Wilson's lawsuit.  (Doc. 5).  SIC contends that Ms. Wilson failed to comply with a policy provision that required her to file her ERISA action within three years of the date on which SIC received Ms. Wilson's proof of loss.  SIC argues that the contractual three year time limit on ERISA actions for policy benefits supplants the

six year statute of limitations that otherwise might apply to Ms. Wilson's claim for disability benefits.

After reviewing the affidavits that Ms. Wilson presented in opposition to SIC's motion to dismiss, the Court notified the parties that it would convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. (Doc. 11). Based on the record and the parties' arguments, for the reasons explained below, the Court finds that the contractual three-year limitation on actions for policy benefits is valid and bars Ms. Wilson's ERISA claim as a matter of law. Therefore, the Court will enter judgment in favor of SIC.

## I.    STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Generally, the existence of an affirmative defense will not support a motion to dismiss." *Quiller v. Barclays American/Credit, Inc.,* 727 F.2d 1067, 1069 (11th Cir. 1984). Nevertheless, "[a] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate 'if it is apparent from the face of the complaint that the claim is time-barred.'" *Gonsalvez v. Celebrity Cruises, Inc.*, 2013 WL 6153695, *1 (11th Cir. Nov. 25, 2013) (quoting *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004)).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'If the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp Art, Inc. v. U.S. Postal Service,* 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Martin v. Alamo Community College Dist.,* 353 F.3d 409, 412 (5th Cir. 2003)). "The court should state on the record the reasons for granting or denying the motion." *Id.* The Court must "consider the facts and reasonable inferences in the light most favorable to the non-moving party." *Hill v. Wal-Mart Stores, Inc.*, 510 Fed. Appx. 810, 813 (11th Cir. 2013) (citing *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009)).

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.     Undisputed Facts[1]

The facts viewed in the light most favorable to Ms. Wilson are these:  Ms. Wilson worked for BE&K, Inc. for almost 16 years.  (Doc. 7-1, p. 1).  As a BE&K employee, she was eligible for a variety of benefits including coverage under a group long term disability insurance policy that SIC issued to BE&K.  (Doc. 5-1).[2] SIC administers the long term disability policy ("LTD Policy") under which Ms. Wilson was insured.   (Doc. 1, p. 1, ¶ 1).   Ms. Wilson paid the LTD Policy premiums out of her salary; BE&K did not contribute to the premium.  (Doc. 7-1, p. 1).

On February 23, 2005, Ms. Wilson stopped working for BE&K because she suffered from various medical conditions, including fibromyalgia, hand tremors, migraine headaches, insomnia, memory loss, chronic bronchitis, mitral valve prolapse, and gastroesophageal reflux disease.   (Doc. 5-2, p. 1; Doc. 7-1, p. 1). Ms. Wilson filed a claim for disability benefits under the LTD Policy.   On December 22, 2005, SIC informed Ms. Wilson that she did not meet the definition of disability under the LTD Policy and denied her claim for benefits.  (Doc. 5-2, p. 1; Doc. 7-2, p. 1; Doc. 8-1).  On April 11, 2006, Ms. Wilson requested review of

---

[1] Unless otherwise noted, these facts are undisputed.

[2] According to the complaint, Ms. Wilson also has an SIC life insurance policy.  (Doc. 1, p. 1, ¶ 7).

SIC's decision denying benefits.  (Doc. 5-2, p. 1).  On May 30, 2006, SIC informed Ms. Wilson that the available medical evidence was insufficient to reverse its decision denying her claim for LTD benefits.  (Doc. 5-2, p. 1).  SIC then referred Ms. Wilson's file to the Administrative Review Unit for an independent review.  (Doc. 5-2, p. 1).

In a letter dated January 19, 2007, SIC informed Ms. Wilson that it had completed its administrative review and determined that the decision denying her claim was "correct and must be upheld."  (Doc. 5-2, p. 1).  The January 19, 2007 letter advised Ms. Wilson:

> If you so request, we may provide you with copies of all documents, records and other information relevant to your LTD claim.  You are entitled to a copy of this information upon request and without charge. You also have the right to file suit under 502(a) of the Employee Retirement Income Security Act (ERISA).
>
> You are entitled to one independent review of your Group Policy. With your receipt of this letter, we have completed that review. Therefore, you have now exhausted the administrative review process available to you under the terms of your Group Policy.

(Doc. 5-2, p. 9).  In the January 2007 letter, SIC noted that Ms. Wilson had not provided certain medical records that SIC had requested.  (Doc. 5-2, p. 9).

Ms. Wilson apparently asked one of her physicians to send additional medical records to SIC.  SIC received those records on January 30, 2007.  (Doc. 5-3. P. 1).  After reviewing those records, SIC sent Ms. Wilson another letter on February 15, 2007.  (Doc. 5-3).  SIC stated that the additional medical records did

not change SIC's decision to deny her claim.   (Doc. 5-3, p. 2).   The letter concluded:

> You are entitled to one independent review of your claim under the terms of the group policy.  This review was previously completed by our Administrative Review Unit. As a courtesy, the Benefits Department conducted an additional, extracontractual review of which the findings and conclusions are communicated in this letter.  This letter concludes our review and there will be no further consideration of your claim.
>
> If you have any questions about this letter or your claim, please write or call me.

(Doc. 5-3, p. 2).

Ms. Wilson did not sue SIC when she received SIC's February 15, 2007 letter.   Instead, at some point, Ms. Wilson applied to the Social Security Administration for disability benefits.   On July 8, 2009, the SSA awarded Ms. Wilson disability benefits, and the SSA determined that Ms. Wilson became disabled on January 1, 2005.  (Doc. 1, ¶ 4; Doc. 7-1, p. 1).  According to Ms. Wilson, the SSA based its disability determination on the same medical information that Ms. Wilson submitted to SIC in support of her claim for policy benefits.  (Doc. 7-1, p. 1).

On April 7, 2011, nearly two years after the SSA found that Ms. Wilson was eligible for SSA disability benefits and more than five years after Ms. Wilson first submitted her Proof of Loss to SIC, an attorney wrote to SIC on Ms. Wilson's behalf, notified SIC of the SSA's disability decision, and asked SIC to revisit its

decision to deny Ms. Wilson's claim for benefits under the BE&K long term disability policy.  (Doc. 7-4, p. 1).  On April 13, 2011, SIC wrote to Ms. Wilson's attorney and informed her that SIC was not required to and would not re-open Ms. Wilson's claim.  (*Id.*).  Ms. Wilson's attorney requested a copy of the LTD policy. The attorney received a copy of the policy on June 21, 2011.  (Doc. 7-5, p. 1).

The BE&K LTD policy contains a section labeled:   "TIME LIMITS  ON LEGAL ACTIONS."  (Doc. 5-1, p. 21).  That section states:

> No action at law or in equity may be brought until 60 days after you have given us Proof of Loss.  No such action may be brought more than three years after the earlier of:
>
> 1.  The date we receive Proof of Loss; and
>
> 2.  The time within which Proof of Loss is required to be given.

(Doc. 5-1, p. 21).[3]  Attached to the policy is an endorsement expressly added "to comply with U.S. Department of Labor regulation 29 CFR 2560.503-1."  (Doc. 5-1, p. 27; Doc. 7-6, p. 1).  That endorsement provides that when SIC denies a claim for LTD benefits, the employee who filed Proof of Loss:

> will receive a written notice of denial containing:
>
> a.      The reason for our decision.
>
> b.      Reference to parts of the Group Policy on which our decision is      based.

---

[3] The policy defines "Proof of Loss" as "written proof that you are Disabled and entitled to [Long Term Disability] Benefits."  (Doc. 5-1, p. 20).

    c.      Reference to any internal rule or guideline relied upon in making our decision.

    d.      A description of any additional information needed to support your claim.

    e.      Information concerning your right to a review of our decision.

    f.      Information concerning your right to bring a civil action under section 502(a) of ERISA if you claim is denied on review.

(Doc. 5-1, p. 27; Doc. 7-6, p. 1).  The endorsement adds that if the employee asks SIC to review a claims decision, if SIC denies the claim on review, SIC will provide:

a written notice of denial containing:

    a.      The reasons for our decision.

    b.      Reference to the parts of the Group Policy on which our decision is based.

    c.      Reference to any internal rule or guideline relied upon in making our decision.

    d.      Information concerning your right to receive, free of charge, copies of non-privileged documents and records relevant to your claim.

    e.      Information concerning your right to bring a civil action under section 502(a) of ERISA.

(Doc. 5-1. p. 28; Doc. 7-6, p. 2).

Ms. Wilson contends that she never received a copy of the LTD Policy or a summary plan description of the terms of the policy.  (Doc. 7-1, p. 2).  Despite "many, many phone conversations" with SIC representatives, Ms. Wilson asserts

that SIC did not notify her that if she wanted to file a lawsuit concerning SIC's denial of her claim for disability benefits, a three year time limit applied to such an action.  (Doc. 7-1, p. 2).

### B.   Procedural History

Ms. Wilson initiated this lawsuit on July 28, 2011.  (Doc. 1).  Pursuant to 29 U.S.C. § 1132, Ms. Wilson asserts an ERISA claim for long-term disability benefits under an employer-sponsored group disability insurance policy.  (Doc. 1, ¶¶ 1, 8).  Prior to converting SIC's Rule 12(b)(6) motion into a motion for summary judgment, the parties filed various exhibits with their briefing.   In addition to the legal arguments contained its motion (Doc. 5), SIC attached three exhibits for the Court's review.   The first exhibit (Doc. 5-1) is a copy of the LTD Policy.  The second exhibit (Doc. 5-2) is a copy of SIC's January19, 2007 letter to Ms. Wilson affirming its decision to deny her claim for benefits.  The third exhibit (Doc. 5-3) is a copy of SIC's February 15, 2007 letter notifying Ms. Wilson that the additional medical evidence she presented did not change SIC's decision to deny benefits.

Ms. Wilson submitted an affidavit in opposition to SIC's motion to dismiss.  (Doc. 7-1).   The attorney who helped Ms. Wilson seek review of SIC's claim decision also provided an affidavit.  (Doc. 7-5).  In addition, Ms. Wilson presented a November 14, 2011 letter from SIC to Ms. Wilson's attorney acknowledging

receipt of a letter requesting additional review of SIC's decision to deny benefits and indicating that SIC had completed its administrative review of Ms. Wilson's claim.  (Doc. 7-4).  She also filed duplicate copies of SIC's January 19, 2007 letter affirming its decision to deny her claim for benefits (Doc. 7-2)[4] and SIC's follow-up letter dated February 15, 2007 (Doc. 7-3).[5]  Ms. Wilson's final exhibit is a copy of a portion of SIC's Policy Endorsement amending language in the LTD Policy to comply with C.F.R. § 2560.503-1.  (Doc. 7-6).

SIC attached one exhibit (Doc. 8-1) to its reply brief.  This exhibit is a copy of a December 22, 2005 letter from SIC to Ms. Wilson denying her claim for long term disability benefits.

After reviewing SIC's motion to dismiss and the parties' briefs and evidentiary submissions, the Court notified the parties that it was converting SIC's Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment.  The Court gave the parties time to file supplemental materials pertaining to the summary judgment motion.  (Doc. 11).  Both parties availed themselves of the opportunity.  (Docs. 12, 15).  Ms. Wilson also filed a motion for leave to amend her complaint (Doc. 13), and SIC submitted opposition to that motion.  (Doc. 16).

---

[4] This letter is identical to Doc. 5-2 attached to SIC's Motion.

[5] This letter is identical to Doc. 5-3 attached to SIC's Motion.

The Court heard oral argument on the motions on January 21, 2014.[6]   At the hearing, counsel for Ms. Wilson asked the Court for an opportunity to provide supplemental authority.   Both parties provided additional authority to the Court following the hearing.   (Docs. 17, 18).

On this record, the Court considers SIC's argument that the three year limitation period in the LTD policy bars Ms. Wilson's claims as a matter of law.

## III.   DISCUSSION

SIC is entitled to summary judgment because it has demonstrated that the three year contractual limitation period in the insurance policy at issue bars Ms. Wilson's claim for policy benefits.[7]   The group long-term disability policy that SIC issued to Ms. Wilson's employer is part of an employee welfare benefit plan that is subject to the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*[8]   Under ERISA, a plan participant like Ms. Wilson may bring a civil action under § 502(a)(1)(B) "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of

---

[6] A transcript of the hearing is available upon request.

[7] The contractual limitation is an affirmative defense on which SIC would bear the burden of proof at trial.

[8] "The terms 'employee welfare benefit plan' and 'welfare plan' mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . disability . . . benefits . . ." 29 U.S.C. § 1002(1).

the plan, or to clarify [her] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

"Statutes of limitations establish the period of time within which a claimant must bring an action." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 134 S. Ct. 604, 610 (2013). "ERISA § 502(a)(1)(B) does not specify a statute of limitations" for filing suit. *Id.* Consequently, courts typically "borrow the most closely analogous state limitations period." *Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir. 1998). As Ms. Wilson points out, the Eleventh Circuit Court of Appeals has held that Alabama's six year statute of limitations for contract actions applies to certain actions under ERISA. *See Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1357 (11th Cir. 1998) (applying a six year statute of limitation because holding that, as a matter of first impression, that "a fiduciary's action to enforce a reimbursement provision pursuant to 29 U.S.C. § 1132(a)(3) is most closely analogous to a simple contract action brought under Alabama law."). Ms. Wilson asks the Court to apply that six year statute of limitations to her claim for policy benefits. The Court would accept the invitation were it not for the fact that the three year time limit on lawsuits under the express terms of the long term disability policy at issue overrides the statutory time limit.

As the Supreme Court recently reiterated in *Heimeshoff*, parties may provide by contract for a limitations period that is shorter than the statutory period, and the parties may select the date on which the contractual time limit begins to run. *Heimeshoff*, 134 S. Ct. at 611. The rule dates to the Supreme Court's opinion in *Order of United Commercial Travelers of America v. Wolfe,* 331 U.S. 586 (1947). There, the Court held that, "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period." *Id.* at 608. In *Heimeshoff*, the Supreme Court held that contractual time limits on lawsuits are "especially appropriate when enforcing an ERISA plan." 134 S. Ct. at 611-12. That is because,

> "employers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 833, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) . . . Th[e] focus on the written terms of the plan is the linchpin of "a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place." *Varity Corp. v. Howe,* 516 U.S. 489, 497, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

*Id.* at 612. Consequently, the Court "must give effect to the Plan's limitations provision" unless the Court determines "either that the period is unreasonably

short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Id.*

In considering the reasonableness factor, the Court again directs its attention to *Heimeshoff* because the contractual limitation on lawsuits in SIC's policy is virtually identical to the plan provision that the Supreme Court reviewed in *Heimeshoff*. The SIC policy provides:

### TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof of Loss. No such action may be brought more than three years after the earlier of:

1. The date we receive Proof of Loss; and

2. The time within which Proof of Loss is required to be given.

(Doc. 5-1, p. 21). The plan at issue in *Heimeshoff* stated: "'Legal action cannot be taken against The Hartford ... [more than] 3 years after the time written proof of loss is required to be furnished according to the terms of the policy.'" *Heimeshoff* 134 S. Ct. at 609 (quoting policy).

The Supreme Court characterized the three year period as a "common contractual limitations provision." *Heimeshoff* 134 S. Ct. at 610.[9] Finding that the

---

[9] The three year period also is common statutorily with respect to long term disability coverage. *See* Ala. Code § 27-19-14; *see also Heimeshoff* 134 S.Ct. at 614 ("[T]he vast majority of States require certain insurance policies to include 3-year limitations periods that run from the date proof of loss is due."). Under the Alabama Code, the three year statutory period pertaining to disability insurance policies does not apply to "[a]ny group or blanket policy." Ala. Code § 27-19-1(2).

three year period was reasonable even though the administrative review process in
*Heimeshoff* consumed nearly two years and left the plan participant with only one
year in which to file suit, the Court reasoned, "Heimeshoff does not dispute that a
hypothetical 1–year limitations period commencing at the conclusion of internal
review would be reasonable. *Id.* at 4. We cannot fault a limitations provision that
would leave the same amount of time in a case with an unusually long internal
review process while providing for a significantly longer period in most cases." *Id.*
at 612-13.  The Court added:

> Heimeshoff, drawing on a study by the American Council of Life Insurers of
> recent § 502(a)(1)(B) cases where timeliness was at issue, states that
> exhaustion can take 15 to 16 months in a typical case. Reply Brief 17–18, n.
> 3 (citing Brief for American Council of Life Insurers et al. as *Amici Curiae*
> 29). In our view, that still leaves ample time for filing suit.

*Id.* at 612, n. 4.[10]

Here, Ms. Wilson filed her Proof of Loss in September 2005.  (Doc. 8, p.
4).[11]  SIC denied her claim on December 22, 2005.  (Doc. 8-1).  SIC completed its

---

[10] *See also Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740 (11th Cir. 2008) (affirming
dismissal of ERISA claim; because the plaintiff "filed her complaint more than one year after she
exhausted her administrative remedies with [the plan administrator], her complaint was time-
barred under the policy's one-year limitation period for filing legal action"); *Harrison v. Liberty
Life Ass. Co. of Boston*, 2011 WL 2118954 (N.D. Fla. May 27, 2011) (finding that the plaintiff's
claims were barred by either the 60 day or one year contractual limitations period).

[11] The record contains no evidence regarding the exact date on which Ms. Wilson filed her Proof
of Loss.  The parties submitted most of their materials concerning the limitations period before
the Supreme Court issued the *Heimeshoff* opinion in December 2013, so the parties operated
from the assumption that, consistent with other judges in this district, the undersigned might use
January 19, 2007, the date on which SIC completed its administrative review of Ms. Wilson's

internal administrative review of Ms. Wilson's claim on January 19, 2007.  (Doc. 5-2, p. 1).  That left slightly more than eighteen months in which Ms. Wilson could file her ERISA action before the contractual three year time limit on lawsuits expired.  Consequently, under *Heimeshoff*, the three year contractual limitation is reasonable.

With respect to the second potential prohibition on a contractual time limit on ERISA suits, namely a "controlling statute" that prevents the contractual provision from taking effect, Ms. Wilson does not point to a statutory provision that prohibits a plan from contracting to reduce the applicable statute of limitations.   The Supreme Court considered a variety of arguable statutory limitations in *Heimeshoff* and found that none of them restricted a plan from contractually establishing a time limit for lawsuits that is shorter than the statutory limit.  *Heimeshoff* 134 S. Ct. at 615-16.

Ms. Wilson urges the Court to toll the LTD policy's time limit on lawsuits because SIC did not provide a copy of the policy to her until June 2011, so she was not aware of the three year cutoff for litigation until after the time limit expired.  Ms. Wilson asserts:

---

claim for benefits, as the trigger date for the three year limitation period.  (*See* Doc. 5, pp. 3-4). Ms. Wilson has not challenged SIC's assertion that she submitted her Proof of Loss in September 2005, and it is undisputed that SIC first denied Ms. Wilson's claim on December 22, 2005. (Doc. 8-1).  Even if the Court gives Ms. Wilson every benefit of the doubt and uses December 22, 2005 as the trigger date for the three year limitations period, that period expired years before Ms. Wilson filed her lawsuit in 2011.

> I never received a copy of my long term disability insurance policy
> with The Standard Insurance Company or any Summary Plan
> Description from them.  I never received anything, in writing or
> verbally, that advised of a 3 year time to file suit.  I had many, many
> phone conversations with people at The Standard Insurance
> Company and was never told of any 3 year limitation to file suit.  I
> also received numerous letters from them and nothing ever told me
> of any 3 year limit about anything.

(Doc. 7-1, p. 1).  According to Ms. Wilson, this omission warrants tolling of the

limitation period.

In *Heimeshoff*, the Supreme Court acknowledged that, "[i]f the

administrator's conduct causes a participant to miss the deadline for judicial

review, waiver or estoppel may prevent the administrator from invoking the

[contractual] limitations provision as a defense." *Heimeshoff*, 134 S. Ct. at 615.

Here, there is no basis for tolling because Ms. Wilson has not demonstrated that

SIC's conduct caused her to miss the three year deadline for judicial review.  It is

undisputed that SIC's January 19, 2007 letter to Ms. Wilson regarding the

company's administrative review of Ms. Wilson's benefits claim stated: "If you so

request, we may provide you with copies of all documents, records and other

information relevant to your LTD claim.  You are entitled to a copy of this

information upon request and without charge."  (Doc. 5-2, p. 9).  Ms. Wilson did

not request a copy of her policy or of a summary plan description in 2007.[12] Instead, she waited until 2011 to ask for a copy of the policy. (Doc. 7-5, p. 1).

Ms. Wilson argues that under Alabama Code § 27-14-19, SIC had to provide a copy of BE&K's group LTD policy to her when she became a plan participant. Section 27-14-19 requires that "every policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance . . .." The Alabama Supreme Court has held that, "when an insurer has not complied with §27-14-19 and its failure to comply has prejudiced the insured, the insurer may be estopped from asserting an otherwise valid coverage exclusion." *Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.,* 659 So. 2d 51, 58 (Ala. 1995).

Ms. Wilson's reliance on § 27-14-19 is misplaced for a number of reasons. First, in examining the meaning of the phrase "the insured or to the person entitled thereto" in § 27-14-19, the *Brown* court observed that § 27-14-19 probably does not apply to a group policy. The Alabama Supreme Court explained:

> beneficiaries of a group policy . . . are probably excluded from the statutory phrase and are therefore not individually entitled to copies of the policy, absent an inquiry, even though they may be 'insureds.' We do not read the statute as being so broad as to extend the right to receive a copy of a policy to all persons who may claim some coverage rights under the policy. A balance must be struck between

---

[12] The record before the Court does not indicate whether the summary plan description for BE&K's employee benefits plan contains information about the time limit for filing a lawsuit to recover long term disability benefits under the SIC policy.

the beneficent purpose of the statute and the burden it places upon the insurance company.

*Brown Mach.,* 659 So. 2d at 60.[13]  It is undisputed that Ms. Wilson did not inquire or request a copy of her policy until June 2011.

Moreover, another judge in this district in a case involving a claim for long term disability benefits under a SIC LTD policy held that § 27-14-19 conflicts with ERISA so that ERISA preempts § 27-14-19.  *Wilcox v. Standard Ins. Co.*, 340 F. Supp. 1266, 1277 (N.D. Ala. 2004).  ERISA requires a plan administrator to provide a copy of a summary plan description to a plan participant; the obligation does not fall to an insurer or a claims administrator.   29 U.S.C. § 1024(b).  Consequently, § 27-14-19 does not govern the ERISA plan involved in this action.

Alternatively, Ms. Wilson argues that under 29 C.F.R. § 2560.503-1, an ERISA regulation, SIC had to advise her of the three year limitation period in the January 19, 2007 letter in which SIC advised Ms. Wilson that it had completed the an internal administrative review of her claim for benefits.  (Doc. 7, pp. 3, 6-8).  That regulation states that any written or electronic notification of an adverse benefits determination must include "[a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA]

---

[13] As noted, a number of provisions of Alabama's insurance code do not apply to group policies. *See*, *e.g.*, Ala. Code §§ 27-14-11(c); 27-19-1(2).

following an adverse benefit determination on review."  29 C.F.R. § 2560.503-1(g)(iv).  SIC's January 19, 2007 letter to Ms. Wilson fulfills the regulation's requirements.  The letter provides:

> The decision to deny your LTD claim has been upheld for the reasons outlined above. . . .  If you so request, we may provide you with copies of all documents, records and other information relevant to your LTD claim.  You are entitled to a copy of this information upon request and without charge.  You also have the right to file suit under 502(a) of the Employee Retirement Income Security Act (ERISA).  You are entitled to one independent review of your Group Policy.  With your receipt of this letter, we have completed that review.  Therefore, you have now exhausted the administrative review process available to you under the terms of your Group Policy.

(Doc. 5-2, p. 9; Doc 7-2, p. 9).  Thus, the letter contains "a statement of the claimant's right to bring a civil action under section 502(a) of [ERISA]."[14]

---

[14]  The letter also satisfies the LTD policy's parallel requirement in the policy's ERISA endorsement.  *See* p. 8, *supra*.  In addition, in its December 22, 2005 letter denying Ms. Wilson's claim, SIC specifically advised her as follows:

> The following is an explanation of your rights to review our decision.

> If you want us to review your claim and this decision, you must send us a written request within 180 days after you receive this letter.  If you request a review, you will have the right to submit additional information in connection with your claim.  Additional information which would be helpful to a reconsideration of your claim includes information that shows you are precluded from full-time sedentary work.  Please include any such new information along with your request for review.

> If you request review, it will be conducted by an individual who was not involved in the original decision.  If necessary, the person conducting the review will consult with a medical professional with regard to your claim.  The medical professional will be someone who was not previously consulted in connection with your claim.  The review would be completed within 45 days after we reviewed your request unless circumstances beyond our control require an extension of an additional 45 days.

Nothing in the regulation requires SIC to supply notice of the contractual limitations period for filing a civil action under ERISA.

The Court is not unsympathetic to Ms. Wilson's argument that failure to provide notice of the time limit for filing an ERISA action undermines the policy considerations that animate ERISA. As Ms. Wilson points out, the Second Circuit described Congress's policy goals in *Veltri v. Building Service 32B-J Pension Fund*, 393 F.3d 318 (2d Cir. 2004). In examining the plaintiff's equitable tolling argument, the court of appeals stated:

> the Fund's nondisclosure [Veltri of his right to file an action in court] must be viewed in light of the regulatory notice requirement and of Congress's policy of protecting the interests of pension plan participants by ensuring "disclosure and reporting to participants" and "ready access to the Federal courts." The notice regulation assumes that a reasonable beneficiary would not otherwise be aware of the existence of a cause of action, and the congressional policy favors placing a burden of disclosure on pension plans and adopting an approach of caution before closing the courthouse door. In light of the regulation and Congress's express policy, we hold that failure to comply with the regulatory obligation to disclose the existence of a cause of action to the plan participant whose benefits have been denied is the type of concealment that entitles plaintiff to equitable tolling of the statute of limitations.

---

If you request a review and the decision to deny your claim is upheld, you will have the right to file suit under Section 502(a) of the Employee Retirement Income Security Act (ERISA) or state law, whichever is applicable.

(Doc. 8-1, p. 5). Thus, SIC informed Ms. Wilson of the plan's administrative procedures, the time limits applicable to those procedures, and her right to file suit under Section 502(a) of ERISA as required by the regulations not just once but twice.

*Id.* at 324 (citations omitted).  Logic suggests that if, absent notice, a reasonable beneficiary would not be aware of the existence of a cause of action in the first instance, then that reasonable beneficiary necessarily would not be aware of the time limit for filing a cause of action without notice.  And the cautious approach might well embrace a notice that explains not only that the courthouse door is open but also how quickly the courthouse door will close.

Still, the regulation does not require a claims administrator to include in its disclosure to a plan participant the deadline for filing a cause of action.  Under the circumstances of this case, the Court will not invoke equitable principles to reach beyond the express requirement of the regulation because the equities, on balance, favor SIC.  Although SIC did not tell Ms. Wilson about the three year time limit for filing suit, in January 2007, SIC did alert Ms. Wilson that it would provide "copies of all documents, records and other information relevant to [her] LTD claim" free of charge.  Ms. Wilson has not explained why she waited more than four years to request a copy of the LTD policy, and she has not demonstrated that SIC discouraged her from seeking a copy of the policy sooner.  Over the course of slightly more than a year, in two separate letters, SIC told Ms. Wilson that she had the right to file a lawsuit to try to recover the benefits that she claimed.  Ms. Wilson did not initiate this action until July 28, 2011, approximately 34 months after the three year contractual time limit for a lawsuit expired.  The record does

not support Ms. Wilson's request for equitable tolling of that limitation period. Therefore, the three year contractual limitations period bars Ms. Wilson's ERISA action.[15]

## V.    CONCLUSION

For the reasons outlined above, the Court **GRANTS** summary judgment in favor of SIC on Ms. Wilson's ERISA claim.  The Court **DENIES** Ms. Wilson's motion to amend her complaint.  (Doc. 13).  The Court will enter a separate order consistent with this memorandum opinion dismissing this action with prejudice.

**DONE** and **ORDERED** this 31st day of January, 2014.

MADELINE HUGHES HAIKALA
UNITED STATES DISTRICT JUDGE

---

[15] Based on the Court's analysis of Ms. Wilson's tolling argument, the Court denies Ms. Wilson's motion to amend her complaint because the amendment would be futile.  (Doc. 13).

23